OPINION
{¶ 1} This matter is before the court on separate notices of appeal filed by Carl and Frances McColloch from an order of the Juvenile Court awarding custody of their three minor children[1] to the Greene County Children's Services Board ("CSB"). The order was entered pursuant to R.C. 2151.414(B) on a motion filed by CSB pursuant to R.C. 2151.413.
 {¶ 2} The Juvenile Court is authorized to enter a permanent custody order only if it finds, by clear and convincing evidence, that two statutory criteria are satisfied. The first is that it is in the best interest of the child to grant permanent custody to the agency. R.C.2151.414(B)(1). The second is that the child cannot be placed with either parent within a reasonable time or should not be placed. R.C.2151.414(B)(2). In making that latter finding the court is charged to consider all relevant evidence. R.C. 2151.414(E). In making the "best interest" finding, the court is charged to consider the factors set out in R.C. 2151.414(D)(1)-(16).
 {¶ 3} This proceeding has an unusual history. Counsel were appointed to represent each parent after CSB filed its motion for permanent custody. Those counsel represented the parents in proceedings before a magistrate, who filed a decision on August 20, 2001. The court adopted the magistrate's decision as its own order on that same date, pursuant to Juv.R. 41(E)(4)(c). Counsel were apparently allowed to withdraw, and each parent then filed a general form of objection, pro se, arguing that their attorneys should not have been permitted to withdraw. New counsel were then appointed.
 {¶ 4} The parents' new counsel filed no additional written objections. The matter eventually came before the court for hearing on February 12, 2002, on the pro se motions the parents had filed. Counsel for Carl McColloch advised the court that he'd not had sufficient time to review the transcript to file written objections. The court advised him and counsel for Frances McColloch that they could proceed orally, and they did.
 {¶ 5} On February 14, 2001 following the hearing, the court recommitted the matter to the magistrate pursuant to Juv.R. 41(E)(4)(b), with directions to "issue a supplemental decision addressing the issue of adjudication." The magistrate's prior decision had apparently not expressly granted custody to CSB.
 {¶ 6} The magistrate filed a supplemental decision on August 20, 2001. The court again adopted the decision pursuant to Juv.R. 41(E)(4)(c). The record does not reflect that any objections to the August 20, 2001 decision were filed. However, and thereafter, the court filed its own, separate judgment on March 12, 2002, granting custody to CSB.
 {¶ 7} The magistrate's two decisions each contain findings. The first decision, which the court adopted on August 20, 2001, but which the court subsequently rejected, in part, for lack of an adjudicative order, states:
 {¶ 8} "Findings of Fact"
 {¶ 9} "Greene County Children Services Board has maintained an open case since 1998 on the McColloch family. On February 1, 1999, Dakota, Kayn and Karleana, the minor children, were removed from their parents' custody due to physical abuse, neglect and dependency. The children were returned on July 16, 1999 and August 12, 1999. The children were placed in the custody of their maternal grandmother on February 28, 2000 and subsequently placed in foster care on March 17, 2000.
 {¶ 10} "When the children were returned to Frances in 1999, services were put in place to assist with preserving the family unit. In spite of the services, the family household deteriorated, the mental stability of Frances deteriorated to the point, as she testified, that she was not cognizant that she was stealing or being charged with a criminal offense. Both Carl and Frances were on probation in Xenia Municipal Court, both have had a history with drugs, Carl was treated at the Christopher House and Frances has a history of mental illness, as she testified, she has tried to commit suicide at least three times prior to 1995.
 {¶ 11} "The testimony presented demonstrates that Frances is able to care for the children for short periods of time, but is quickly overwhelmed and even more so when Carl is factored into the equation.
 {¶ 12} "The Guardian ad litems and Dr. Kelliher submitted reports to the court recommending that it was in the best interest of the children to grant permanent custody to Greene County Children Services Board."
 {¶ 13} The magistrate's second decision, after the case was recommitted to the magistrate for an adjudicative order, states:
 {¶ 14} "The Court found that the children lacked proper parental care because of the faults or habits of the parents and their condition or environment was such that it warranted this state, in the interests of the children in assuming guardianship.
 {¶ 15} "The Court heard testimony that both parents at times between February and May, 2000, were incarcerated. In February, 2000, the home was unsanitary, contained a strong oder, dirty, stale food, and the children were inadequately clothed."
 {¶ 16} The trial court's written judgment of March 12, 2002, reviewed the course of the proceedings, and then stated the following:
 {¶ 17} "When the complaint seeking custody was filed . . . the agency had been providing services to the family for approximately eighteen months. Some of the same concerns, such as mental stability and safety of the children, persisted, but new issues also surfaced. Frances was involved in drug trafficking and petty theft. Carl was having difficulties with the law as well, spending periods of time incarcerated and in residential treatment programs. While there is evidence, even from some of CSB's witnesses, which indicates that Frances can be a good parent, there is also ample evidence which supports the Magistrate's finding that Frances is not able to maintain proper care of the children, especially when Carl is in the picture. There was conflicting testimony as to whether Frances was hiding Carl's presence in the home from CSB, but it is the function of the trier of fact to determine which testimony to believe.
 {¶ 18} "Each parent was assessed by Dr. Kelliher to determine the likelihood that the children could be returned to either one within a reasonable time. Dr. Kelliher had previously evaluated the parents, in connection with the initial Complaint filed by CSB. It was Dr. Kelliher's opinion that the children should be placed into the permanent custody of CSB.
 {¶ 19} "The Magistrate applied the appropriate statutory criteria in ruling on the issue of permanent custody. There is sufficient evidence in the record to support the Findings of Fact made by the Magistrate.
 {¶ 20} * * *
 {¶ 21} "The Objections are overruled. The Magistrate's Decision is approved as submitted."
 {¶ 22} Carl and Frances McColloch, who are represented on appeal by another set of appointed counsel, each present the same two assignments of error: that the trial court abused its discretion when it found that permanent placement with CSB was in the children's best interest, and that they cannot be placed with either parent within a reasonable time.
 {¶ 23} R.C. 2151.414(C) requires a court that enters a permanent placement order to "file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding" upon the request of a party. It appears that neither parent made that request. However, it is expected that the court will issue some form of findings and conclusions, in view of the complex deliberative requirements imposed by R.C. 2151.414 and the significance of the interests the custody decision affects, which are fundamental liberty interests of the parents in the care and management of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599.
 {¶ 24} The proceedings before the magistrate involved the testimony of twelve different witnesses. The trial court took no testimony in its hearing on the oral "objections," but relied on arguments of counsel. The combined transcript of the two proceedings is 396 pages in length. It is difficult to know what evidence was relied upon to make the findings concerned, because both the magistrate's and the court's findings of fact are sparse and are stated in the narrative form rather than as positive declarations of the facts that were found to exist.
 {¶ 25} A further concern is with respect to the legal representation the parents received. Their first counsel filed no objections at all to the magistrate's decision, and apparently were allowed to withdraw before the time for objections had expired. The parties were required to file their own objections, pro se, and both objected to their counsel's being "dismissed" before the matter was completed. New counsel were appointed, but they likewise failed to file written objections.
 {¶ 26} Juv.R. 41(E)(3)(a) contemplates written objections when objections are filed. The trial court waived that requirement, though it is not authorized by the rule to do that, and instead heard oral "objections" presented by counsel, one of whom hadn't had time to review the transcript of the proceedings before the magistrate. The court's final order fails to rule on any objections that it did hear.
 {¶ 27} R.C. 2151.414 imposes exact and stringent requirements for issuance of the permanent custody order that the section authorizes. To satisfy them, the preferred practice is to set out discrete findings of fact, relating those findings to the evidence that was offered to support them and the statutory factors the court is required to consider in reaching the dual conclusions that a permanent custody order requires. A format of that kind has two benefits: it advises a parent of the particular causes that resulted in the loss of his or her child, and it tells an appellate court why the juvenile court made the findings required. That latter purpose is especially important when the appellate court must decide whether the custody decision is founded on clear and convincing evidence.
 {¶ 28} When a domestic relations court divides marital property, it must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93. The requirement applies with even greater force to awards of permanent custody made pursuant to R.C. 2151.414, in view of the complexity of the procedure that section requires and the fundamental nature of the interests of both the parents and the children.
 {¶ 29} On the record before us, we are unable to determine the error assigned. Therefore, pursuant to App.R. 27, the matter will be remanded to the trial court to enter findings of fact and conclusions of law proper in form in relation to the record. Because the Juvenile Court has entered a final order, which our order does not affect, recommittal of the matter to the court's magistrate is not required.
 {¶ 30} The parties may file supplemental briefs after the findings and conclusions are filed, according to the format for which the Rules of Appellate Procedure provides.
 {¶ 31} While we set no time limit on the accomplishment of our remand, we urge the Juvenile Court to act with the utmost speed in completing its tasks. We are required by App.R. 11(C) to give custody cases expedited treatment. Indeed, all courts are enjoined to resolve custody matters promptly in order to avoid continued disruption that temporary custody involves.
BROGAN, J. and YOUNG, J., concur.
[1] One of the three children, Dakota is not Carl's child, but is Frances's from another union.